## No. 26070

## The People of the State of Colorado v. Raymond S. Davis

(533 P.2d 38)

Decided March 24, 1975.

152

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE DAY.

Appellant Davis was convicted by a jury of robbery and conspiracy to commit robbery and he appeals. We affirm.

Although Davis was originally charged pursuant to sections 18-4-302 and 18-2-201, C.R.S. 1973 with aggravated robbery and conspiracy to commit the same, the jury found him guilty of the necessarily included lesser offenses of simple robbery and conspiracy.

The only issue in this appeal is whether the lineup procedure

which led to appellant's identification denied him due process of law.

A lineup identification was conducted in a Denver police station two days after the holdup of a gasoline service station. Seven black men, of differing heights and weights, were in the lineup. All wore prison garb. Counsel for the appellant was present to represent him.

The lineup observers were cautioned not to talk to each other, nor let other people see how they marked their selection cards. They were told that the men in the lineup would be dressed in jail clothes, would turn to various profiles and positions and then state their age, height and weight. Further, each man in the lineup would try on a pair of appellant's sunglasses and then pass them on to the next man down the line.

Defense counsel at the lineup voiced no objection to this procedure. He merely noted that two suspects were in the same lineup, that there was a wide discrepancy in height and weight, and that each suspect wore glasses.

An eyewitness to the robbery observed the lineup, and afterwards marked the numbers 2, 6, and 7 on his selection card. No one aided or suggested these selections. The eyewitness was certain of his selection of number 6, an accomplice of the appellant. However, he hedged on the other two numbers because the men resembled each other. He finally decided that number 2 (the appellant) was the robbery participant.

In March 1973, a hearing was held on the appellant's motion to suppress possible out-of-court and in-court identification at trial by the eyewitness to the crime. The motion was denied.

Davis contends that during the lineup, he was effectively singled out as "the man" since all other lineup participants were required to try on his prescription sunglasses. He alleges that at the outset of the lineup, the eyewitness was uncertain whether number 2 or number 7 was the robber, and accordingly circled both numbers on the lineup identification card. It was only after the sunglasses were tried on by each lineup man that the eyewitness' choice of the appellant crystallized.

■ The United States Supreme Court has held that a lineup procedure which is impermissibly suggestive and conducive to irreparable mistaken identification violates due process of law.

However, such a claimed violation depends upon the totality of circumstances surrounding the event. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ This court has held that suggestiveness alone does not warrant a judicial declaration that there has been a violation of due process of law. There must have been impermissible suggestiveness — that is, suggestiveness to such a degree as to make the identification unreliable as a matter of law and result in a possible miscarriage of justice. *Neighbors v. People,* 171 Colo. 349, 467 P.2d 804 (1970).

At the hearing on the motion to suppress, the eyewitness candidly admitted the appellant looked like "he was used to putting [the sunglasses] on and off," and that "[t]hey looked normal on him." However, the eyewitness further related several other factors which had influenced his final choice: (1) the lineup man's voice; (2) his height; (3) his walk; and (4) the way he looked after he had put on the sunglasses.

During trial, the eyewitness emphasized that:
"I never saw the man without glasses until the lineup. When he put on the glasses, there was quite a difference. In other words, I mean I recognized the man."

■ There was no indication that the lineup procedure involving the sunglasses was meant to be suggestive; it was merely used to afford the eyewitness an opportunity to view the suspects under conditions most like those of the holdup. Defense counsel did not object to the procedure. There was testimony that no suspects in the lineup appeared uncomfortable, nor made any faces or gestures while trying on the sunglasses. Therefore, we cannot find as a matter of law that the wearing and removing of appellant's sunglasses was an unduly suggestive procedure which unerringly singled him out, or so tainted the in-court identification as to deny him due process of law. *Neighbors, supra.*

Appellant bases his argument on *State v. Northup,* Me. 303 A.2d 1 (1973), which involved a lineup where the defendant wore a distinctive blue plaid shirt while the others wore drab attire. The defendant obviously stood out in the crowd. Here, all lineup participants were dressed alike, and each performed the exact same actions.

Thus, considering the totality of the circumstances, there was

no effort made to single out the appellant, nor to unduly focus attention on him.

Judgment affirmed.

MR. JUSTICE HODGES, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur.